JAMES FALZONE, administrator, *vs.* JOSEPH L. BURGOYNE.

Suffolk.        November 9, 1944. — January 4, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Negligence,* Motor vehicle, Use of way, Contributory, Due care of child. *Practice, Civil,* Interrogatories. *Evidence,* Interrogatories.

Evidence that, in a thickly populated neighborhood where there were children playing in the street, the operator of a| large motor truck walked across the street to the truck at the same time that a child nearby also walked across to a position at the curb immediately in front of the truck, that the operator entered the truck, which was so built that his view immediately in front of it was obscured, and, without having seen the child and without sounding his horn, started the truck slowly and ran over the child, warranted a finding of negligence on the operator's part.

Evidence of the conduct of a child about seven years of age who, at the same time that the operator of a motor truck walked across a street with the intention of starting the truck, also walked across to a position at the curb immediately in front of it to procure a stick to use in play and was run over when the operator without warning started the truck, did not require a finding of contributory negligence on the child's part.

A trial judge had power to exclude an interrogatory and the answer thereto, when offered under G. L. (Ter. Ed.) c. 231, § 89, by the party interrogated after the interrogating party had introduced in evidence other interrogatories and answers relating to the same subject matter, if the excluded answer was not responsive to the interrogatory and was a statement made upon information without stating the source of the information.

A judge presiding at a trial on the merits has power to pass upon the
admissibility in evidence of the answer to an interrogatory propounded
under G. L. (Ter. Ed.) c. 231, § 61.

TORT. Writ in the East Boston District Court dated
January 14, 1942.

On removal to the Superior Court, the case was tried
before *O'Connell,* J.

*R. J. Walsh,* for the defendant.

*J. B. O'Hare,* for the plaintiff.

WILKINS, J. This is an action of tort by the adminis-
trator of the estate of Marie Falzone, who was the plain-
tiff's minor daughter, to recover for her death and conscious
suffering alleged to have been caused by the negligent oper-
ation of a truck owned by the defendant and operated by
his agent. The answer sets up a general denial and con-
tributory negligence. The jury returned a verdict for the
plaintiff. The defendant's exceptions present the questions
whether the judge was right in denying his motion for a
directed verdict and in refusing to admit in evidence an
answer of the defendant to an interrogatory propounded
by the plaintiff.

1. There was evidence warranting the jury in finding the
following: The deceased, seven and one half years old and
four and one half feet tall, resided at 184 Havre Street,
East Boston, near the entrance to Sumner Tunnel. She
had finished the first grade in school, and "her health, men-
tal condition, and eyesight were good." Havre Street was
thirty to thirty-one feet wide from curb to curb, and the
sidewalks were six to seven feet wide. There was a fire
hydrant in the sidewalk about twenty feet to the left of the
front stairway of her house in the direction of the tunnel.
On July 26, 1941, about 10 A.M., the defendant's truck,
twenty feet in length and operated by his agent, one Le-
Blanc, had dumped sand at 187 Havre Street, diagonally
across the street from number 184 in the direction away
from the tunnel. Thereafter LeBlanc drove the truck across
the street and parked it at the curb in front of number 184
about six to ten feet short of the hydrant. He then re-
turned to number 187 and assisted the driver of another

truck to unload bags of cement.  While LeBlanc was dump-
ing sand from the defendant's truck, the deceased came out
of her door and went directly across the street to the side-
walk in front of number 183, where two other girls, one
aged eight and the other six or seven, were "walking up
and down the street, playing baton, drum major."  There
were "quite a few children playing in the sand that had
been dumped" at number 187.  The deceased had no satis-
factory stick, and two minutes after the truck was parked
in front of number 184 she saw a "pear box" across the
street about eighteen inches in front of the truck.  She
walked across the street, and knelt down in the gutter
close to the curbing to try to break a stick off the box.  At
this time another eight year old girl was sitting on the steps
of number 184.  While the deceased was walking across the
street, LeBlanc was walking toward the truck.  He got into
the cab of the truck on the left side where the wheel was,
and started the motor.  The deceased was "right in front
of the truck" when it started to move.  No horn was
blown.  The truck proceeded six feet and stopped after the
right forward wheel apparently had either run over the de-
ceased or squeezed her against the curb.  She suffered con-
sciously and died from her injuries.

There were read in evidence answers to interrogatories
propounded by the plaintiff both in the case at bar and in
an action tried with it by the plaintiff against LeBlanc.
These answers were to the effect that LeBlanc did not see
the deceased prior to the accident; that he walked to the
truck, got in, started the motor, moved forward slowly,
"heard yell," and stopped; that his speed was less than
three miles an hour; and that he applied his brakes "ap-
proximately at point of accident."

The defendant's motion for a directed verdict was rightly
denied.  It is assumed in the defendant's favor that there
is nothing in the evidence contradicting the answers to the
interrogatories and particularly the answer that the operator
did not see the deceased.  The plaintiff, accordingly, is
bound by the answers.  *Slamin* v. *New York, New Haven &
Hartford Railroad*, 282 Mass. 590, 592.  *Schrank* v. *County*

*Savings Bank,* 298 Mass. 30, 33. The operator, however, was crossing the street with a view immediately to starting the truck at the same time that the deceased was crossing the street. He was no mere pedestrian. He was an immediately prospective operator of a large truck. The jury could have found that he should have seen the child and kept her in mind when starting up the truck, which was twenty feet long and, as appears from a photograph in evidence, had an enclosed cab and a very high radiator that completely obscured his view of the street in front of him for at least ten feet. He was in a thickly populated area, as appears from another photograph in evidence, near the entrance to Sumner Tunnel, and there were many children in the vicinity, even though most, but not all, of them may have been at the sand pile to his left rear. We are of opinion that the limited vision afforded the operator once he had mounted the cab in a street where many children were playing imposed upon him a greater degree of vigilance than he exercised by merely returning to the truck and starting it ahead without sounding his horn or having looked in the dead space in front of the radiator. We think that this case more closely resembles *Minsk* v. *Pitaro,* 284 Mass. 109, 112, *Eaton* v. *S. S. Pierce Co.* 288 Mass. 323, *St. Pierre* v. *Hathaway Baking Co.* 296 Mass. 455, *Capano* v. *Melchionno,* 297 Mass. 1, and *D'Ambrosia* v. *Brest,* 302 Mass. 316, than it does *O'Reilly* v. *Sherman,* 298 Mass. 571, *Burke* v. *Durland,* 312 Mass. 291, *Cioffi* v. *Lowell,* 316 Mass. 256, or *Walker* v. *Bullard, ante,* 288.

The question is close, but it was for the jury to say whether the deceased was contributorily negligent. She was not guilty of contributory negligence if she exercised the care of the ordinarily prudent girl of her age. *Bessey* v. *Salemme,* 302 Mass. 188, 194. *Holden* v. *Bloom,* 314 Mass. 309, 312. She was not thus guilty just because she was playing in the street. *Schneider* v. *DeChristopher,* 301 Mass. 241, 243–244. *Holden* v. *Bloom,* 314 Mass. 309, 312. She and the truck had equal rights in the highway. *Crimmins* v. *Armstrong Transfer Express Co.* 217 Mass. 155, 156–157. She knelt in what proved to be a dangerous position in the gutter but

close to the curb in front of the right front wheel of the truck and occupied herself with a task which apparently prevented her from hearing the starter of the truck. It does not appear, however, that she was in this position more than very briefly. The operator and she walked across the street simultaneously, and he climbed into the cab and started the motor at once. She also was entitled to rely to some extent on the assumption that she had been observed, and that the operator would take proper precautions to protect her from injury and would not set the truck in motion against her without warning. *Dube* v. *Keogh Storage Co.* 236 Mass. 488, 492. *Tenney* v. *Reed*, 262 Mass. 335, 336–337. *Holden* v. *Bloom*, 314 Mass. 309, 313. The deceased did not step from behind one object in the street in front of another as in *Doyle* v. *Boston Elevated Railway*, 248 Mass. 89.

2. The defendant excepted to the exclusion, when offered by him in evidence, of the defendant's answer to interrogatory 12 propounded by the plaintiff. The interrogatory and answer were: Q. "Please describe in detail just what the defendant or the operator of the defendant's vehicle did in an attempt to avoid the alleged accident?" A. "Defendant has been informed there was nothing the defendant's operator could do to avoid the accident." The plaintiff had already introduced in evidence the defendant's answer to another interrogatory inquiring how the accident occurred. This entitled the defendant to read in evidence his answers to other interrogatories upon the same subject matter. *Freeman* v. *United Fruit Co.* 223 Mass. 300, 304. *Reid* v. *Bacas, ante,* 240, 242. G. L. (Ter. Ed.) c. 231, § 89. The answer in question, however, was not responsive in two respects. It stated what could not be done and not what the operator actually did. It was couched in terms of hearsay. While it is true that hearsay information acquired from a party's agents, servants, and attorneys may be embodied in answers to interrogatories (*Warren* v. *Decoste*, 269 Mass. 415, 418; G. L. [Ter. Ed.] c. 231, § 62), this answer may well have been based on the fact that the defendant was "informed" by someone not included among his agents, servants, and

attorneys. The ruling of the trial judge was right unless for some reason he lacked the power to exclude the answer, as, for example, because the plaintiff had failed to move to strike out the answer before trial or at least before reading any of the answers in evidence. We are of opinion that the trial judge did not lack the power to rule upon the admissibility of the answer. The trial judge "acts to the end that a just result be reached." *Field* v. *Hamm,* 254 Mass. 268, 271. *Goldman* v. *Ashkins,* 266 Mass. 374, 380. His power to rule upon the admissibility of evidence should be complete in every respect. "Interrogatories and the answers thereto are admitted and read at the trial only as evidence. G. L. (Ter. Ed.) c. 231, §§ 61, 89." *Dome Realty Co.* v. *Cohen,* 290 Mass. 36, 39. The trial judge also should have the right in ruling upon the admissibility in evidence of answers to interrogatories to correct what may appear to him to be an error made by a previous judge in ordering interrogatories to be answered or in passing upon a motion to strike out answers. See *Wakeley* v. *Boston Elevated Railway,* 217 Mass. 488, 491. See also *Peterson* v. *Hopson,* 306 Mass. 597, 603–605. His position is logically the same even though, as here, no such motion was made.

*Exceptions overruled.*